## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

**RICHARD DANIEL L'ARCHEVEQUE,**

      **Plaintiff,**

**v.**                                          **Case No: 5:14-cv-515-Oc-PRL**

**COMMISSIONER OF SOCIAL
SECURITY**

      **Defendant.**

_____

## ORDER

Plaintiff appeals the administrative decision denying his application for Supplemental Security Income ("SSI"). Upon a review of the record, the memoranda, and the applicable law the Commissioner's decision is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

### I.    BACKGROUND

On March 8, 2010, Plaintiff Richard Daniel L'archeveque, filed an application for SSI alleging a disability onset date of March 15, 2010. (Tr. 20, 321). After an initial hearing before Administrative Law Judge Philemnia M. Jones (the "ALJ") (Tr. 109–156), the ALJ held a second hearing on September 10, 2012. (Tr. 38–108). Two months later, the ALJ issued an unfavorable decision. (Tr. 20–31).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 15, 2010, which is the alleged onset date. (Tr. 23). At step two, the ALJ determined that Plaintiff had the following severe impairments: degeneration of the lumbar spine with back pain syndrome, right-eye blindness, and hearing loss. (Tr. 23).

At step three, the ALJ found that Plaintiff did not have an impairment or a combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.   (Tr. 25).   Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). The claimant is capable of lifting 10 pounds. The claimant is capable of standing and/or walking for 2 hours in an 8-bour workday and sitting for 6 hours in an 8-hour workday. The claimant is limited to occasional climbing, balancing, stooping, kneeling, crouching and crawling but he should never climb ladders, ropes or scaffolds. Due to diminished visual acuity, the claimant is visually limited to occasionally with the right eye but he has unlimited with color vision. The claimant should avoid even minor exposure to hazards due to his vision loss. The claimant could hear normal speech with someone sitting 3 feet away but anyone sitting 9 feet or more away should speak loudly. Due to back pain, the claimant should have the opportunity to stand 3 to 5 minutes every hour. Subsequent to February 2, 2012, the claimant's residual functional capacity is further restricted to no lifting his right arm above his shoulder level.

(Tr. 25–29).   At step four, the ALJ determined that Plaintiff has no past relevant work.   (Tr. 29).

At step five, however, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform.   (Tr. 29–30).   Namely, Plaintiff can perform the sedentary occupations of microfilming document preparer/document scanner, table worker, and addresser.   (Tr. 30). Thus the ALJ found that Plaintiff was not disabled.   (Tr. 31).

On May 2, 2014, the Appeals Council denied Plaintiff's Request for Review, making the hearing decision the final decision of the Commissioner.   (Tr. 2–4).   With his administrative remedies exhausted, Plaintiff timely filed the instant appeal.   (Doc. 1).

## II.   STANDARD OF REVIEW

A claimant is entitled to disability benefits when he or she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to either result in death or last for a continuous period of not less than twelve months.   42 U.S.C. §§416(i)(1), 423(d)(1)(A); 20 C.F.R. §404.1505(a).

The Commissioner has established a five-step sequential analysis for evaluating a claim of disability, which is by now well-known and otherwise set forth in the ALJ's decision.  *See* 20 CFR §§ 404.1520(a), 416.920(a); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The claimant, of course, bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

The scope of this Court's review is limited to a determination of whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988)(citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)).   Indeed, the Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g).   Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).   Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.   *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).   This is clearly a deferential standard.

## III.   DISCUSSION

Plaintiff raises two arguments on appeal: (1) whether the ALJ properly accounted for Plaintiff's visual and auditory limitations in the RFC assessment and hypothetical question to the Vocational Expert, and (2) whether a consultative psychological evaluation was necessary to fully and fairly develop the record.

### A.   Substantial evidence supports the RFC assessment

First, Plaintiff argues that the RFC assessment fails to properly account for his right-eye blindness.   The RFC provides that Plaintiff is "visually limited to occasionally with the right eye but he has unlimited . . . color vision. The claimant should avoid even minor exposure to hazards due to his vision loss."   (Tr. 25).   Plaintiff contends that the RFC improperly limits his right eye vision on only an "occasional basis."   (Pl.'s Br. at p. 12).   However, this argument ignores a significant part of the RFC assessment: The RFC limits Plaintiff to avoiding even minor exposure to hazards and this limitation is not qualified by the word "occasional" (or any other qualification). Thus the RFC does not impose visual limitations on only an occasional basis.

Further, substantial evidence supports the RFC assessment regarding Plaintiff's visual limitations.   As the ALJ noted, the medical evidence shows that Plaintiff has been diagnosed with a macular scar in his rights and is legally blind in that eye with only 20/200 vision.   (Tr. 26–27, 390–91, 410, 430).   Yet, a diagnosis alone, of course, is insufficient to show a disabling impairment.   *See Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (noting that "a diagnosis or a mere showing of' 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work") (quoting *McCruter v. Bowen,* 791 F.2d 1544, 1547 (11th Cir.1986)).   Moreover, the ALJ found that Plaintiff's left eye is normal with perfect 20/20 vision and, despite the right eye

blindness, he can drive a vehicle without any visual impairment restrictions on his driver's license and he can perform some household functions.   (Tr. 27, 48–50, 69–72, 343, 344, 410, 430).

Second, Plaintiff argues that the RFC assessment, which provides that Plaintiff can "hear normal speech with someone sitting 3 feet away but anyone sitting 9 feet or more away should speak loudly," fails to properly account for his auditory limitations.   However, in support of this argument, Plaintiff only cites his own testimony from the September 2012 hearing before the ALJ, which reflects that Plaintiff had difficulty in hearing the ALJ.   (Pl.'s Br. at pp. 13–14).   Yet, it appears that the ALJ simply spoke louder to resolve the problem.   (Tr. 41, 49, 54–55).   Indeed, according to the ALJ, Plaintiff was capable of communicating during that hearing with only a "minimal amount" of increase in the speaking volume.   (Tr. 28, 41).

Further, substantial evidence supports the RFC regarding Plaintiff's auditory limitations. The ALJ noted that though Plaintiff has 38% bilateral hearing loss, his driver's license does not have any restrictions regarding hearing impairments, he does not wear a hearing aid, Plaintiff is not receiving medical treatment for hearing loss, and his treating physicians have not restricted his activities in any way due to hearing loss.   (Tr. 26, 28, 41, 49–50, 56, 461).

Finally, the ALJ posed a proper hypothetical to the Vocational Expert ("VE").   In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question that comprises all of the claimant's impairments.   *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).   Though the hypothetical question must include all of the claimant's limitations, an ALJ is not required to include findings in the hypothetical that are not supported by the record. *Crawford*, 363 F.3d at 1161.   Here, the hypotheticals the ALJ posed to the VE included all of the restrictions accepted as credible by the ALJ and included in the RFC.   (Tr. 92–93).   Further, Plaintiff does not cite to any other medical evidence that the ALJ failed to consider or that supports

disabling or additional limitations not accounted for in the RFC.   Thus, regarding Plaintiff's visual and auditory limitations, the RFC assessment is supported by substantial evidence and the ALJ posed a proper hypothetical to the VE.

### B. The ALJ fully and fairly developed the record

Next, Plaintiff argues that a consultative psychological evaluation was necessary to fully and fairly develop the record.   It is well-settled that the ALJ has a "basic obligation" to develop a full and fair record.   *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).[1]   Although the ALJ has a basic obligation to fully and fairly develop the record, Plaintiff—and not the ALJ—bears the burden of proving she is disabled, and thus, Plaintiff is responsible for producing evidence to support his claim.   *Id*.   The ALJ's obligation to develop a full and fair record includes ordering a consultative examination if one is needed to make an informed decision.   *See Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984).   However, an ALJ is not required to order a consultative examination as long as the record contains sufficient evidence for the ALJ to make an informed decision.   *See Doughty v. Apfel*, 245 F.3d 1274, 1280–81 (11th Cir. 2001); *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999).

Where, as here, a case is heard by an ALJ, the "ALJ has regulatory flexibility to evaluate mental impairments to determine their severity" without necessarily obtaining a consultative examination first.   *Sneed v. Barnhart*, 214 F. App'x 883, 886 (11th Cir. 2006); *Plummer v. Apfel*, 186 F.3d 422, 433 (3d Cir. 1999) ("[A]n ALJ is not required to employ the assistance of a qualified psychiatrist or psychologist in making an initial determination of mental impairment."); *see Russell*

---

[1] This basic obligation only rises to the level of a special duty when a claimant is unrepresented and unfamiliar with hearing procedures.   *See Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Here, Plaintiff was represented at the administrative hearing by an attorney (Tr. 38) and Plaintiff raises no challenge regarding her representation.   Accordingly, the ALJ's duty to develop a full and fair record did not rise to the level of a heightened duty.   *See Ellison*, 355 F.3d at 1276–77.

*v. Astrue*, 742 F. Supp. 2d 1355, 1371 (N.D. Ga. 2010).   Indeed, because the Social Security Act requires only substantial evidence to support the ALJ's findings, a consultative examination is not required to establish absolute certainty regarding Plaintiff's condition.   *Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988).   Moreover, "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record."   *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997).   The court should be guided by whether the record shows evidentiary gaps which result in unfairness or "clear prejudice."   *Id.*

Here, the record contained sufficient evidence to allow the ALJ to make an informed decision about the severity of Plaintiff's mental impairments.   The ALJ found that Plaintiff's medically determinable mental impairments of depression, anxiety, and panic attacks caused only minimal limitations in his ability to work and are non-severe.   (Tr. 23).   In making this finding, the ALJ noted Plaintiff's testimony that he is depressed, spends most of the day in bed, takes medication for his depression, does not cook or clean, but does attend to his own personal hygiene. (Tr. 23, 80–81, 90, 140–41).   During the September 2012 hearing, Plaintiff testified that he experiences panic attacks up to three times a day, has suicidal thoughts, was referred to a psychiatrist, and has been taking medication for depression for over twelve years.   (Tr. 79–81, 86, 90).

But, as the ALJ noted and despite Plaintiff's testimony of mental illness, he has not sought treatment from a mental health professional (Tr. 23, 89, 123, 329, 343).   *Garcia v. Astrue*, No. 8:10-CV-2237-T-TGW, 2011 WL 3875430, at *4 (M.D. Fla. Sept. 1, 2011) (finding that no consultative exam was necessary where there was "no indication that [the plaintiff] sought treatment with a mental health professional").   Further, the mere fact that Plaintiff is being treated

with medication for depression does not necessitate a consultative examination.  *Sneed*, 214 F. App'x at 886 ("[B]rief references to depression, which [are] apparently being treated with medication, [are] insufficient to trigger the ALJ's duty to obtain a psychological consultative report.").  Also, the treating physician who prescribed Plaintiff's depression medication did not opine that his depression or anxiety would render him incapable of working or limit his activity, and Plaintiff never testified that his mental impairments actually interfered with his ability to work.  *Nigro v. Astrue*, No. 806-CV-2134-T-MAP, 2008 WL 360654, at *3 (M.D. Fla. Feb. 8, 2008) (finding that the ALJ properly developed the record where "[n]one of Plaintiff's treating physicians opined that due to depression or anxiety she was not capable of working, or limited her activity as a result of her depression or anxiety").

The ALJ also noted that Plaintiff is able to attend to his medical appointments and that, despite having panic attacks, Plaintiff maintains personal and social relationships—e.g., Plaintiff has lived with a roommate for seven years.  (Tr. 23, 68).  The ALJ observed that, during the September 2012 hearing, Plaintiff was an "accurate historian concerning his personal, vocational medical history."  (Tr. 24).  The ALJ noted that Plaintiff has had no episodes of decompensation for extended durations and the record shows no evidence that Plaintiff has been frequently hospitalized or received emergency room treatment for his mental illness; indeed, Plaintiff testified that he has never been Baker Acted or hospitalized for his mental illness.  (Tr. 24, 80–81, 86).

Also, the medical records include findings regarding Plaintiff's mental impairments.  For example, a consultative exam from May of 2010 reveals that Plaintiff was alert and oriented, with normal affect and mood, apparent normal intellectual functioning, and with no overt signs of psychosis or obvious signs of an unstable personality disorder noted.  (Tr. 409, 411).  In May of 2012, another physician noted that Plaintiff had anxiety, sleep disturbances, and panic attacks, but

that he *denied* bipolar disease, hallucinations, eating disorder, a high stress level, and depression. (Tr. 465).

In support of his argument, Plaintiff focuses on a plan proposed by his consultative neurologist Robert Maiello, M.D., who performed a nerve conduction study, that Plaintiff "needs psychiatric referral to address his anxiety and panic attacks, as well as assist him with trying to deal with his current situation."  (Tr. 520–22).   But, as the Commissioner notes, this suggestion is not a diagnosis of depression or anxiety.  (Gov.'s Br. at pp. 12–13).   Further, Dr. Maiello is not a mental health professional (nor a treating physician) and his recommendation for a referral is not an assessment of a functional limitation.  *Amedio v. Astrue*, No. 8:10-CV-1350-T-TGW, 2011 WL 2446610, at *6 (M.D. Fla. June 15, 2011) (finding that no consultative exam was needed and noting that "sporadic mentions in the record of depression without an assessment of a functional limitation would not have prompted the law judge to think that the plaintiff was restricted in her working capacity due to depression").   In any event, sufficient evidence existed for the ALJ to make an informed decision regarding Plaintiff's mental health impairments.

Accordingly, the ALJ was not required to order a consultative psychological examination. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007) (noting that the ALJ is "not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision").

## IV.   CONCLUSION

For the reasons stated above, it is **ORDERED** that the ALJ's decision should be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).   The **Clerk is directed** to enter final judgment for the **Commissioner** and **close the file**.

**DONE and ORDERED** in Ocala, Florida on March 23, 2016.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties